1
2
3
4
5
6
7
8
9
10
11
12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

| | | |
|---|---|---|
| McKINLEY KEY, | ) | |
| Petitioner, | ) | No. C 04-0696 CRB (PR) |
| | ) | |
| vs. | ) | ORDER DENYING |
| | ) | PETITION FOR A WRIT OF |
| J. SOLIS, Warden, | ) | HABEAS CORPUS |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

19          Petitioner, a state prisoner incarcerated at the Correctional Training

20   Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. §

21   2254 challenging the California Board of Prison Terms' ("BPT") decision of

22   November 6, 2001 finding him not suitable for parole.

23          Per order filed on July 19, 2004, the court found that the petition appeared

24   to state cognizable due process claims under § 2254, when liberally construed,

25   and ordered respondent to show cause why a writ of habeas corpus should not be

26   granted.  After seeking and obtaining an extension of time, respondent instead

27   filed a motion to dismiss the petition for failure to exhaust state judicial remedies

28   as to all claims.

Per order filed on May 2, 2005, the court granted respondent's motion and, pursuant to the law of the circuit, directed petitioner to inform the court in writing whether he wished to (1) withdraw his unexhausted claim and proceed only on his exhausted claims, or (2) dismiss the entire mixed petition and return to federal court with a new petition once all claims are exhausted.  Petitioner chose the first option and, per order filed on May 23, 2005, the unexhausted claim was stricken and the court's original order to show cause was reinstated.

Respondent has now filed an answer to the order to show cause and petitioner has filed a traverse.

## BACKGROUND

Petitioner was convicted in the Superior Court of the State of California in and for the County of Los Angeles of two counts each of kidnaping for robbery and robbery with the enhancement of using a knife during each offense.  On July 26, 1985, he was sentenced to a prison term of life plus one year, with the possibility of parole.

Petitioner has been found not suitable for parole each time he has appeared before the BPT.  On November 6, 2001, petitioner appeared before the BPT for a subsequent parole consideration hearing and again was found not suitable for parole.

Petitioner challenged the BPT's November 6, 2001 decision in the state superior, appellate and supreme courts.  After the Supreme Court of California denied review of his final state habeas petition on December 17, 2003, the instant federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 followed.

/

/

/

2

**DISCUSSION**

A.    <u>Standard of Review</u>

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Id.</u> § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state

3

court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B. Legal Claims

Petitioner seeks federal habeas corpus relief from the BPT's November 6, 2001 decision finding him not suitable for parole, and denying him a subsequent hearing for one year, on the ground that the decision does not comport with due process. Petitioner claims that the decision was "arbitrary and capricious" and not supported by the evidence.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. See Cal. Code Regs. tit. 15, § 2402(b) – (d).

/

4

The Ninth Circuit has held that the parole scheme set forth in section 3041 and accompanying regulations "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections.  McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has never been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with 15-to-life sentence implicated prisoner's liberty interest).

Respondent argues that the Ninth Circuit's holdings in McQuillon and Biggs no longer control because the Supreme Court of California since held in In re Dannenberg, 34 Cal. 4th 1061 (2005), that the language of section 3041 is not mandatory and, therefore, California inmates cannot have a liberty interest in early release on parole that is protected by federal due process.  Unfortunately for respondent, the Ninth Circuit recently rejected their no-liberty-interest argument and made clear that "California inmates continue to have a liberty interest in parole after In re Dannenberg, 34 Cal. 4th 1061 (2005)."  Sass v. California Bd. of Prison Terms, No. 05-16455, slip op. 10563, 10566 (9th Cir. Aug. 31, 2006). It also held that the "some evidence" standard identified in Superintendent v. Hill, 472 U.S. 445 (1985), is clearly established federal law in the parole context for AEDPA purposes.  Id. at 10572-73.

Due process requires that "some evidence" support the parole board's decision not to release the prisoner.  Id. (holding that Hill, which required "some evidence" to support revocation of inmate's good-time credits, applies to decisions to deny parole reviewed in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same); Jancsek v. Oregon Bd. of

Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (same).   The "some evidence" standard is minimally stringent:  The "Due Process Clause does not require courts to set aside decisions of prison administrators that have <u>some</u> basis in fact."  <u>Hill</u>, 472 U.S. at 456 (emphasis added).  The relevant question for the court is "whether there is any evidence in the record that could support the conclusion reached by the [BPT]."  <u>Id.</u> at 455-56.  The court "cannot reweigh the evidence;" it only looks "to see if 'some evidence' supports the BPT's decision."  <u>Powell v. Gomez</u>, 33 F.3d 39, 42 (9th Cir. 1994).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability.  <u>Biggs</u>, 334 F.3d at 915; <u>McQuillion</u>, 306 F.3d at 904; <u>Jancsek</u>, 833 F.3d at 1390.  Relevant in this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board.  <u>See</u> <u>Pedro v. Oregon Parole Bd.</u>, 825 F.2d 1396, 1399 (9th Cir. 1987); <u>see also</u> <u>Morales v. California Dep't of Corrections</u>, 16 F.3d 1001, 1005 (9th Cir. 1994) (court may consider whether a prisoner's allegations of any violations by the board are of a "minor" nature, whether they are supported in fact, whether the prisoner had an opportunity to participate, and whether he took full advantage of that opportunity), <u>rev'd on other grounds</u>, 514 U.S. 499 (1995).

In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision.  <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir. 2005).

Here, the record shows that on November 6, 2001, petitioner appeared with counsel before a BPT panel for a subsequent parole consideration hearing. The presiding commissioner explained that in assessing suitability for parole the panel would consider petitioner's commitment offense, prior criminal and social history, and his programming and behavior since commitment, including progress

6

since petitioner's last hearing, any new psychiatric reports and any other information that may have a bearing on parole suitability.  <u>Accord</u> Cal. Code Regs. tit. 15, § 2402(b) (setting out factors to be considered in determining suitability for parole).  The commissioner also explained that the panel had reviewed petitioner's central file and prior transcripts, that it would afford petitioner an opportunity to make corrections to the record, and that petitioner would be given an opportunity to make a final statement regarding parole suitability.

The panel then discussed with petitioner the evidence relevant to each of the factors to be considered in determining his suitability for parole, and provided him with ample opportunity to be heard on every issue.  The panel also heard final statements from a deputy district attorney and petitioner's attorney.

The panel recessed to deliberate and, after the hearing resumed, concluded that although petitioner was "headed in the right direction," his "release at this point would pose an unreasonable risk of danger to society."  Nov. 6, 2001 Hr'g Tr. at 35 (Resp't Ex. 3).  The panel explained that it had considered all relevant evidence and concluded that the factors suggesting unsuitability outweighed those suggesting suitability.

The panel found that the commitment offense was carried out in a "cruel manner, a manner which demonstrates a callous disregard for human suffering."  <u>Id.</u> at 35-36.  Using a knife, petitioner kidnaped two women in a car, took money and a necklace from them, tied them up with their purse straps and pantyhose, and put one of them into the trunk of the car.  The panel also found that petitioner has an unstable social history and prior "criminality," including substance abuse, gang activity and multiple arrests for theft crimes and assault with a deadly weapon.  <u>Id.</u> at 37.  He was shot in the head by a rival gang member and, after the

leaving the hospital, committed the kidnaping for robbery offense for which he is now serving time.

The panel found that the most recent psychiatric report of petitioner was inconclusive. Id. at 38-39. Although Dr. Carswell diagnosed petitioner as having an antisocial personality disorder that was improving, and estimated petitioner's potential for violence to be no higher than the average citizen in the community, Carswell noted that petitioner's potential for violence may be affected by his return to the gang and/or substance-abuse lifestyle.

The panel found that petitioner's parole plans had been made too hastily and that additional time was needed to confirm their substance. Id. at 39. Petitioner's plans had changed since he had recently spoken with his counselor and his cousin's offer of a job was written only in an informal letter to petitioner and not on any sort of company letterhead.

The panel commended petitioner for doing "some good things in the last few years," including completing a vocation graphic arts program, obtaining his GED, participating in AA and NA, and taking some self-help in salesmanship. Id. at 40. However, it made clear that in its judgment "[t]he positive factors of your behavior do not outweigh the factors of [un]suitability." Id. The panel encouraged petitioner to "remain disciplinary free" and "[c]ome "back in a year," and "your chances will certainly be enhanced by that." Id.

The state courts denied petitioner's request for state habeas relief from the BPT's determination that he was not suitable for parole. The California Court of Appeal stated:

> We have independently reviewed the record before the Board with deference to the Board's "broad discretion" in parole matters (In re Rosenkrantz (2002) 29 Cal.4th at p. 656), and conclude "some evidence" supports each of the Board's findings, including the Board's findings with regards to Key's commitment offense, his pattern of escalating criminal behavior, the 1999

psychiatric report, the hastily prepared nature of Key's parole plans and the relatively recent improvement in Key's institutional behavior.  (In re Rosenkrantz, supra, 29 Cal.4th at p. 652.)  Thus, the petition for writ of habeas corpus is denied.

In re McKinley Key, No. B169782, slip op at 1 (Cal. Ct. App. Sept. 15, 2003) (Resp't Ex. 10).

Petitioner is not entitled to federal habeas relief because the state courts' rejection of his federal claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  The BPT's November 6, 2001 decision to deny petitioner parole is supported by some evidence in the record and that evidence bears some indicia of reliability.  See, e.g., Sass, slip op. at 10573-74 (upholding denial of parole based solely on gravity of offense and pre-conviction offenses); Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); Biggs, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment).  Petitioner's disagreement with the BPT's assessment of the evidence does not compel a different result.  Our inquiry here is simply "whether there is any evidence in the record that could support the conclusion reached by the [BPT]."  Hill, 474 U.S. at 455-56 (emphasis added).  There is – the kidnaping for robbery offense was cruel and callous; petitioner has a pre-commitment history of substance abuse and gang-related criminal activity; his parole plans did not appear firm and his institutional gains were relatively recent.  Cf. Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability and circumstances tending to show suitability).  It is not up to this court to "reweigh the evidence."  Powell, 33 F.3d at 42.

9

1   Petitioner claims that the BPT's continued reliance on his committing

2   offense and prior history violates his due process rights.  But even if none of the

3   post-commitment factors relied upon by the BPT constitute "some evidence," the

4   Ninth Circuit recently made clear that evidence of a prisoner's "prior offenses and

5   the gravity of his convicted offense[]" may "constitute some evidence to support

6   the [BPT's] decision."  Sass, slip op. at 10573.  It simply cannot be said that in

7   "making a judgment call based on evidence of pre-conviction recidivism and the

8   nature of the conviction offense," the BPT acted "arbitrarily."  Id.

9   The court is satisfied that the BPT gave petitioner individualized

10  consideration and that there is "some evidence" in the record to support the

11  panel's decision to deny petitioner parole for one year after the November 6, 2001

12  subsequent hearing.  It simply cannot be said that the state courts' rejection of

13  petitioner's challenge to the BPT's November 6, 2001 decision was contrary to,

14  or involved an unreasonable application of, clearly established Supreme Court

15  precedent, or that it was based on an unreasonable determination of the facts.  See

16  28 U.S.C. § 2254(d); Sass, slip op. at 10573-74.  Petitioner is not entitled to

17  federal habeas relief.

18                              **CONCLUSION**

19  For the foregoing reasons, the petition for a writ of habeas corpus is

20  DENIED.

21  The clerk shall enter judgment in favor of respondent and close the file.

22  SO ORDERED.

23  DATED:  Sept. 22, 2006      _____

24                              CHARLES R. BREYER
                                United States District Judge

25

26

27

28                                      10